UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MWF FOUNDATION, INC. | ) | |
| | ) | Case No. 12 CV 2208 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE SEPERO, CARMELO | ) | Jury Trial Demanded |
| PROVENZANO, DANIEL DRAGAN, | ) | |
| JOSEPH D. CLARK, SP INVESTORS, | ) | |
| INC., CAXTON CAPITAL | ) | |
| MANAGEMENT, LLC, CAXTON | ) | |
| CAPITAL GROUP, LLC and CASA | ) | |
| NOSTRA ENTERPRISES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff, MWF Foundation, Inc. for its Complaint against Defendants, George Sepero, Carmelo Provenzano, Daniel Dragan, Joseph D. Clark, SP Investors, Inc., Caxton Capital Management, LLC, Caxton Capital Group, LLC, and Casa Nostra Enterprise, Inc. states as follows:

NATURE OF THE CASE

1. This is an action brought for violation of the Securities and Exchange Act of 1934 ("the Exchange Act"). As set forth in more detail below, the Defendants made numerous false statements to the president of Plaintiff, MWF Foundation, Inc. ("MWF" and "Plaintiff"), and engaged in numerous acts and practices that operated as a fraud upon MWF.

1

## THE PARTIES

2. MWF Foundation ("MWF") is an Illinois not for profit corporation.

3. Defendant George Sepero ("Sepero") is a resident of New Jersey.

4. Defendant Carmelo Provenzano ("Provenzano") is a resident of New Jersey.

5. Defendant Daniel Dragan ("Dragan") is a resident of New Jersey.

6. Defendant Joseph D. Clark ("Clark") is a resident of New Jersey.

7. Defendant SP Investors, Inc. ("SP Investors") is a New Jersey corporation. Upon information and belief, Defendants Sepero and Provenzano are the principals of SP Investors, Inc.

8. Defendant Caxton Capital Management, LLC ("Caxton") is a New Jersey limited liability company. Upon information and belief, Dragan and Clark are the principals of Caxton Capital Management, LLC.

9. Defendant Caxton Capital Group, LLC is a New Jersey limited liability company. Upon information and belief, Dragan and Clark are the principals of Caxton Capital Management, LLC.

10. Defendant Casa Nostra Enterprises, Inc. ("Casa Nostra") is a New Jersey corporation of which Sepero is a principal.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction as claims asserted herein arise under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder 17 C.F.R. § 240.10b-5. Jurisdiction is conferred by Section 27 of the Exchange Act.

12. This Court also has subject matter jurisdiction as Plaintiff and all of the defendants are citizens of different states and the amount in controversy exceeds $75,000. This Court, therefore has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

13. Venue is proper in this Court as many of the false representations that Defendants made to Plaintiff were made in this district.

## FACTS COMMON TO ALL COUNTS

14. On or about April 16, 2010, Michael Fehrenbacher ("Fehrenbacher"), the president of MWF, met with Sepero, Provenzano, Dragan and Clark (collectively "Defendants") at Caxton and SP Investors' office in Mahwah, New Jersey (the "April 16, 2010 Meeting").

15. During the April 16, 2010 Meeting, Sepero, Provenzano, Dragan, and Clark solicited MWF to open an account with Caxton to trade in the European currency markets.

16. During that meeting, Sepero, Dragan, and Clark informed Fehrenbacher that Clark had developed a special mathematical formula for currency trading that had yielded substantial profits.

17. During that meeting, Sepero, Provenzano, Dragan, and Clark informed Fehrenbacher that MWF would be the owner of the currency trading account and that the account would be in MWF's name.

18. During that meeting, Sepero, Provenzano, Dragan, and Clark informed Fehrenbacher that the funds that MWF invested would be liquid and that MWF could withdraw its investment within 24 to 48 hours of requesting a withdrawal.

19. During that meeting, Sepero, Provenzano, Dragan, and Clark informed Fehrenbacher that he would have online access to the account.

20. The statements recited in paragraphs 16-19 were false.

21. Based on the representations made by the Defendants at the April 16, 2010 Meeting, on or about June 9, 2010, MWF wired $100,000 to SP Investors Account at Bank of America to be deposited into a MWF currency trading account with Caxton (the "Caxton Account").

22. On or about June 12, 2010, Sepero sent a text message to Fehrenbacher confirming the receipt of the funds and stating that the funds were trading. In that text message, Sepero also represented to Fehrenbacher that MWF would be provided with online access to the Caxton Account through a website and that the address of that website would be provided to him.

23. On or about June 23, 2010, Provenzano posing as an individual named Mel Tannenbaum provided Fehrenbacher with a website address (www.avscarter.com) and instructions for Fehrenbacher to use to log in and view MWF's Caxton Account statements.

24. Defendants provided MWF with statements for its Caxton Account MWF's on-line access to the avscarter.com website. Those statements falsely represented that MWF's investment was earning substantial profits.

25. On the majority of the dates described below, Fehrenbacher accessed MWF's false account statements through the avscarter.com website from MWF's office in St. Charles, Illinois or from his home in Batavia, Illinois.

26. On or about June 23, 2010, the statement that Defendants provided to MWF through the avscarter.com website falsely represented that MWF's $100,000 investment had earned $16,000 in profits in two weeks.

27. Based on those false statements, Fehrenbacher decided to invest more of MWF's money with Defendants.

28. On or about June 24, 2010, MWF wired another $100,000 to SP Investors' account at Bank of America to be deposited into the Caxton Account.

29. On or about July 6, 2010, the statement that Defendants provided to MWF through the avscarter.com website falsely represented that MWF's $200,000 investment had earned $26,000 in profits.

30. MWF continued to receive statements from Defendants through its on-line access to the avscarter.com website in which Defendants falsely represented that MWF's investment was earning substantial profits.

31. On or about October 1, 2010, based on the false statements that MWF had been receiving from Defendants, MWF wired an additional $400,000 to SP Investors' account at Bank of America.

32. On or about October 7, 2010, Dragan and Clark met Fehrenbacher at Sullivan's restaurant in Naperville, Illinois to discuss MWF's account. During that meeting, Dragan and Clark falsely represented to Fehrenbacher that the account was trading and that everything was on course for MWF's account to have a very good year.

33. On or about October 12, 2010, based on the false statements that MWF had been receiving from Defendants, MWF wired an additional $55,000 to SP Investors' account at Bank of America bringing MWF's total investment to $655,000.

34. On or about October 14, 2010, Provenzano met Fehrenbacher at Gibson's restaurant in Oak Brook, Illinois. During that meeting, Provenzano falsely represented to Fehrenbacher that MWF's account was trading and earning substantial profits.

35. On or about November 11, 2011, Dragan visited Fehrenbacher's home in Batavia, Illinois. During that visit, Dragan falsely represented to Fehrenbacher that MWF's account was trading and earning substantial profits.

36. On or about December 27, 2010, the statement that Defendants provided to MWF through the avscarter.com website falsely represented that MWF's $655,000 investment had earned over $207,000 in profits and that the account balance was $862,928.

37. On or about January 1, 2011, the statement that Defendants provided to MWF through the avscarter.com website falsely represented that MWF's $655,000 investment had earned $213,000 in profits and that the account balance was approximately $868,000.

38. On or about January 11, 2011, the statement that Defendants provided to MWF through the avscarter.com website falsely represented that MWF's $655,000 investment had earned $223,000 in profits and that the account balance was approximately $878,000.

39. On or about January 13, 2011, the statement that Defendants provided to MWF through the avscarter.com website falsely represented that MWF's $655,000 investment had earned over $226,000 in profits and that the account balance was approximately $881,793.

40. On or about February 3, 2011, Dragan and Clark falsely stated to Fehrenbacher that MWF's $655,000 investment had earned $235,000 in profits and that the account balance was approximately $890,000.

41. On or about February 3, 2011, Fehrenbacher on behalf of MWF sent Dragan an e-mail in which he informed him that MWF wished to withdraw $30,000 from the Caxton Account. Fehrenbacher requested that the funds be wired to MWF by February 11, 2011.

42. Both Dragan and Sepero acknowledged Fehrenbacher's request and represented to him that the funds would be wired to MWF.

43. MWF did not receive the $30,000 wire transfer.

44. On or about February 22, 2011, Dragan and Clark falsely stated to Fehrenbacher that MWF's $655,000 investment had earned $252,000 in profits and that the account balance was $907,627.20.

45. On or about February 22, 2011, during a telephone call between Sepero and Fehrenbacher, Sepero falsely represented that MWF would receive the $30,000 withdrawal by the end of that week.

46. In February, 2011, Fehrenbacher requested that Dragan and Clark provide him with a paper statement for the Caxton Account. Dragan and Clark responded by representing to Fehrenbacher that Sepero and Provenzano would provide him with a paper statement.

47. On or about February 24, 2011, Sepero and Provenzano provided Fehrenbacher with a paper statement for the Caxton Account. Through that paper statement, Sepero and Provenzano falsely represented to Fehrenbacher that the balance of

the Caxton Account was $907,697.26. Through that paper statement, Sepero and Provenzano also falsely represented to Fehrenbacher that MWF had received the $30,000 wire transfer that he had requested.

48. After receiving the paper statement, Fehrenbacher informed Sepero and Provenzano that MWF had not received the $30,000 wire transfer. Sepero and Provenzano then falsely represented to Fehrenbacher that the wire transfer was being processed.

49. On or about March 2, 2011, Dragan and Clark falsely stated to Fehrenbacher that MWF's $655,000 investment had earned $273,000 in profits and that the account balance was approximately $928.000.

50. Over the next few months, Fehrenbacher made repeated demands of Sepero and Dragan to wire MWF the $30,000 withdrawal that he had requested. Sepero, Dragan, and Clark repeatedly promised Fehrenbacher that the $30,000 would be wired shortly; however the funds were never provided to MWF.

51. On or about May 1, 2011, Fehrenbacher sent an e-mail to Sepero, Provenzano, Dragan, and Clark directing them to liquidate MWF's Caxton Account.

52. Beginning in May, 2011, Fehrenbacher made repeated demands of Defendants to return all of the money that he had transferred to them for investment in the Caxton Account, as well as the profits that Defendants had represented to Fehrenbacher that the investment had earned. Sepero and Dragan made repeated promises to Fehrenbacher that all of the funds would be returned to MWF.

53. On or about July 12, 2011, Dragan informed Fehrenbacher, for the first time, that MWF was not actually the owner of the Caxton Account. Dragan informed

8

Fehrenbacher that SP Investors, a company owned by Sepero and Provenzano, was actually the owner of the account and would have to authorize any transfers or withdrawals of those funds. This statement directly contradicted the statements made to Fehrenbacher by Sepero, Provenzano, Dragan and Clark at the April 16, 2010 meeting that MWF would be the owner of the account and that it could withdraw the funds at any time and would receive the funds within 24 – 48 hours.

54. Defendants never provided MWF with the return of any of the $655,000 that MWF had transferred to them to be deposited into MWF's Caxton Account nor did MWF ever receive any profits.

55. In September 2011, during a telephone conversation, Sepero represented to Fehrenbacher that he and Provenzano had made $325,000 in commissions from the Caxton Account. Sepero further represented to Fehrenbacher that the commissions that he and Provenzano had earned had been invested in Cosa Nostra Enterprises, Inc., a corporation of which Sepero is the principal.

56. In December, 2011, Sepero represented to Fehrenbacher that MWF's funds had been transferred to Defendant Casa Nostra's account at Bank of America.

Defendants' False Statements

57. Defendants made the numerous false statements described above including, but not limited to:

  a. Sepero, Dragan, and Clark's statements to Fehrenbacher at the April 16, 2010 meeting that Clark had developed a special mathematical formula for currency trading that had yielded substantial profits.

  b. Sepero, Provenzano, Dragan, and Clark's statements to Fehrenbacher at the April 16, 2010 meeting that the currency

9

       trading account that they were proposing that MWF open with Caxton would be in MWF's name.

c. Sepero, Provenzano, Dragan, and Clark's statements to Fehrenbacher at the April 16, 2010 meeting that the currency trading account that they were proposing that MWF open with Caxton would be liquid and that all funds in the account could be withdrawn within 24-48 hours.

d. Defendants' representations to Fehrenbacher through the statements that they provided to him through on-line access to the avscarter.com website on the dates recited above that MWF's investments had earned the profits recited above.

e. Dragan and Clark's statement to Fehrenbacher at the October 7, 2010 meeting that they had at Sullivan's Restaurant in Naperville, Illinois that MWF's account was trading and was on track to have a very good year.

f. Provenzano's statement to Fehrenbacher at the October 14, 2010 meeting that they had at Gibson's Restaurant located in Oak Brook, Illinois that MWF's account was trading and earning substantial profits.

g. Sepero and Provenzano's representation on the paper statement that they sent to Fehrenbacher on or about February 24, 2011 in which the falsely represented that the balance of the Caxton Account was $907,697.26 and falsely represented that the wire transfer had been sent.

h. Dragan's statement to Fehrenbacher on or about November 11, 2011 at Fehrenbacher's home in Batavia, Illinois that MWF's account was trading and earning substantial profits.

i. Sepero, Dragan, and Clark's repeated statements to Fehrenbacher that MWF would receive the $30,000 withdrawal that he requested.

    58.    Upon information and belief, Sepero, Dragan and Clark's statement that Clark had developed a mathematical formula that had yielded substantial profits was false as MWF never received any profits.

10

59. Sepero, Provenzano, Dragan, and Clark's statement made at the April 16, 2010 meeting that the Caxton currency trading account would be in MWF's name was false as, on or about July 12, 2011, Dragan informed Fehrenbacher that the account was actually in SP Investors' name.

60. Sepero, Provenzano, Dragan, and Clark's statement made at the April 16, 2010 meeting that the Caxton currency trading account would be liquid and that MWF could withdraw its funds within 24-48 hours was false as MWF attempted to withdraw $30,000 for over eight months and never received the funds that it sought to withdraw.

61. Dragan and Clark's representations made through the statements that they provided to Fehrenbacher through his access to the avscarter.com website on the dates recited above that MWF's investment had earned profits in the amounts identified above were false as MWF never received any profits nor did it ever receive the return of its principal.

62. Dragan and Clark's statement to Fehrenbacher on October 7, 2010 at Sullivan's restaurant in Naperville, Illinois that MWF's account was trading and on track to have a very good year was false as MWF never received any profits nor did it receive the return of its principal.

63. Provenzano's statement to Fehrenbacher on October 14, 2010 at Gibson's Restaurant in Oak Brook, Illinois that MWF's account was trading and earning substantial profits was false as MWF never received any profits nor did it receive the return of its principal.

64. Sepero and Provenzano's representations on the paper statement for the Caxton Account that they sent to Fehrenbacher on or about February 24, 2011 that the

11

balance of the account was 907,697.26 and the $30,000 wire transfer that Fehrenbacher had requested had been sent were false as MWF never received the return of its principal, any profits, or the $30,000 wire transfer.

65.     Dragan's statement to Fehrenbacher on or about November 11, 2011 at Fehrenbacher's home in Batavia, Illinois that MWF's account was trading and earning substantial profits was false as MWF never received any profits nor did it receive the return of its principal.

## Defendants' Scienter

66.     Sepero, Provenzano, Dragan and Clark all knew that the statements regarding the Caxton Account described above were false as they knew that Clark had not developed a special mathematical formula for currency trading that had generated substantial returns, they knew that SP Investors rather than MWF would be the holder of the Caxton Account, they knew that the funds in the Caxton Account would not be liquid with 24-48 hours, and they knew that the profits reported on the fictional statements were false.

## MWF's Reliance on Defendants' False Statements

67.     Sepero, Provenzano, Dragan, and Clark made the false statements at the April 16, 2010 Meeting for the purpose of inducing MWF to wire funds to them.

68.     Sepero, Provenzano, Dragan, and Clark made the false representations on the statements that they provided to MWF through the avscarter.com website that MWF's investment had earned the profits identified on those statements in order to induce MWF to wire additional funds to them and to not attempt to withdraw the funds that it had invested.

12

69. Dragan, Clark and Provenzano made the statements to Fehrenbacher during their October and November, 2011 visits to him in Illinois that the account was trading and earning substantial profits in or to induce Fehrenbacher to not attempt to withdraw the funds that MWF had invested.

70. Fehrenbacher on behalf of MWF relied on Sepero, Dragan, and Clark's statements made at the April 16, 2010 meeting that Clark had developed a special mathematical formula for foreign currency trading that had yielded substantial profits, that MWF would be holder of the Caxton Account, that the funds in the Caxton Account would be liquid and could be withdrawn within 24-48 hours in deciding to wire a total of $655,000 to SP Investors to be deposited in the Caxton Account and invested by Defendants. Had Sepero, Provenzano, Dragan, and Clark not made those false statements, MWF would not have wired any money to Defendants.

71. Fehrenbacher on behalf of MWF further relied on the representations made by Defendants on the fictional account statements that they provided to him through access to the avscarter.com website that MWF's investment had earned the reported profits in deciding to wire additional money to be deposited in the Caxton Account and in deciding to leave its investment with Defendants. Had Sepero, Provenzano, Dragan, and Clark not made those false representations on the fictional account statements, MWF would not have wired any additional money to Defendants and would not have left its funds with Defendants.

72. MWF's reliance on Defendants' false statements was justified as Fehrenbacher had been referred to Sepero by an acquaintance that he trusted and as Defendants held themselves out to be reputable investment advisors.

13

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

73. MWF repeats and realleges the allegations of paragraphs 1 – 72 as though fully set forth herein.

74. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a) employed devices, schemes, and artifices to defraud in connection with Plaintiff's investment in the Caxton Account.;

    (b) made numerous untrue statements of material fact in connection with Plaintiff's investment in the Caxton Account as described above; and

    (c) engaged in acts, practices and a course of business that operated a fraud or deceit upon Plaintiff in connection with Plaintiff's investment in the Caxton Account.

75. MWF has suffered damages as it has not received the return any of the $655,000 that MWF wired to Defendants to be deposited in the Caxton Account, nor any of the profits that Defendants represented to MWF that its investment had made.

76. Defendants' false representations proximately caused MWF's loss as MWF would not have wired the funds to Defendants if they had not made those false statements.

WHEREFORE, Plaintiff, MWF Foundation, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants, George Sepero, Carmelo Provenzano, Daniel Dragan, Joseph D. Clark, SP Investors, Inc., Caxton Capital

Management, LLC, Caxton Capital Group, LLC, and Casa Nostra Enterprise, Inc., in an amount to be determined at trial, that Plaintiff be awarded its reasonable costs and attorneys' fees, and that the Court order whatever further relief it should deem just and proper.

## COUNT II

### (Fraud)

77. MWF repeats and realleges the allegations of paragraphs 1 – 72 as though fully set forth herein.

78. Defendants made the false statements of material fact described above.

79. Defendants knew that their statements of material fact were false.

80. Defendants made the false statements of material fact above for the purpose of inducing MWF to wire funds to them.

81. Fehrenbacher on behalf of MWF relied on Sepero, Provenzano, Dragan, and Clark's statements made at the April 16, 2010 meeting that Clark had developed a special mathematical formula for foreign currency trading that had yielded substantial profits, that MWF would be holder of the Caxton Account, and that the funds in the Caxton Account would be liquid and could be withdrawn within 24-48 hours in deciding to wire a total of $655,000 to SP Investors to be deposited in MWF's Caxton Account and invested by Defendants. Had Sepero, Provenzano, Dragan, and Clark not made those false statements, MWF would not have wired any money to Defendants.

82. Fehrenbacher on behalf of MWF further relied on the representations made by Defendants on the fictional account statements that Defendants provided to Fehrenbacher through his access to the website that MWF's investment had earned the

15

profits reported on those statements in deciding to wire more money to be deposited in the Caxton Account and in deciding to leave its investment with Defendants.

83. Had Sepero, Provenzano, Dragan, and Clark not made those false representations on the fictional statements, MWF would not have wired any additional money to Defendants and would not have left its funds with Defendants.

84. MWF's reliance on Defendants' false statements was justified as Fehrenbacher had been referred to Sepero by an acquaintance that he trusted and as Defendants held themselves out to be reputable investment advisors.

85. MWF has suffered damages as it has not received the return of an of the $655,000 that MWF wired to SP Investors be deposited in MWF's Caxton Account, nor any of the profits that Defendants represented to MWF that its investment had made.

86. Defendants' false representations proximately caused MWF's loss as MWF would not have wired the funds to Defendants if they had not made those false statements.

87. Defendants' actions in defrauding MWF were willful, wanton and made with reckless indifference to MWF's rights.

WHEREFORE, Plaintiff, MWF Foundation, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants, George Sepero, Carmelo Provenzano, Daniel Dragan, Joseph D. Clark, SP Investors, Inc., Caxton Capital Management, LLC, Caxton Capital Group, LLC, and Casa Nostra Enterprise, Inc., in an amount to be determined at trial, that Plaintiff be awarded punitive damages in an amount to be determined at trial, that Plaintiff be awarded its reasonable costs and attorneys' fees, and that the Court order whatever further relief it should deem just and proper.

## Count III

### (Conspiracy to Defraud)

88. MWF repeats and realleges the allegations of paragraphs 1 – 72 as though fully set forth herein.

89. Prior to the April 16, 2010 meeting Sepero, Provenzano, Dragan and Clark entered into an agreement and conspiracy to defraud MWF by inducing its president, Michael Fehrenbacher, to wire money to them by inducing him to transfer money to SP Investors which Defendants represented would be deposited in an account with Caxton to be held by MWF and invested by Defendants invested in foreign currency markets.

90. Sepero, Provenzano, Dragan, and Clark committed overt acts in furtherance of the conspiracy including, but not limited to, making the false statements to Fehrenbacher at the April 16, 2010, Meeting, setting up the fraudulent Caxton Account, providing Fehrenbacher with access to that account through the avscarter.com website, providing the fictional account statements to Fehrenbacher that falsely informed MWF that its investment had earned substantial profits, traveling to Illinois to meet with Fehrenbacher to falsely inform him that MWF's investment was earning substantial profits, and failing to return the investment once Fehrenbacher demanded that Defendants do so.

91. By their agreement and conspiracy, Sepero, Provenzano, Dragan, and Clark unlawfully and fraudulently caused MWF to transfer $655,000 to them, which they have refused to return.

92. Sepero, Provenzano, Dragan, and Clark's actions in entering into and carrying out the above described conspiracy were willful, wanton, and made with reckless indifference to MWF's rights.

WHEREFORE, Plaintiff, MWF Foundation, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants, George Sepero, Carmelo Provenzano, Daniel Dragan, Joseph D. Clark, SP Investors, Inc., Caxton Capital Management, LLC, Caxton Capital Group, LLC, and Casa Nostra Enterprise, Inc., in an amount to be determined at trial, that Plaintiff be awarded punitive damages in an amount to be determined at trial, that Plaintiff be awarded its reasonable costs and attorneys' fees, and that the Court order whatever further relief it should deem just and proper.

**Count IV**

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.)**

93. MWF repeats and realleges the allegations of paragraphs 1-72 as though fully set forth herein.

94. Defendants performed numerous deceptive acts including, but not limited to, Sepero, Provenzano, Dragan, and Clark's false statements at the April 16, 2010, Meeting, setting up the fraudulent Caxton Account, providing Fehrenbacher with fictional account statements through the avscarter.com website that falsely informed MWF that its investment had earned substantial profits, traveling to Illinois to meet with Fehrenbacher to falsely inform him that MWF's investment was earning substantial profits, and failing to return the investment once Fehrenbacher demanded that Defendants do so.

18

95. Defendants intended that MWF rely on their deceptive acts and wire money to them.

96. Defendants' deceptive acts occurred in a course of trade and commerce.

97. MWF has suffered damages as it has not received the return of any of the $655,000 that MWF wired to Defendants to be deposited in the Caxton Account, nor any of the profits that Defendants represented to MWF that its investments had made.

98. Defendants' false representations proximately caused MWF's loss as MWF would not have wired $655,000 to Defendants if they had not made those false statements.

WHEREFORE, Plaintiff, MWF Foundation, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants, George Sepero, Carmelo Provenzano, Daniel Dragan, Joseph D. Clark, SP Investors, Inc., Caxton Capital Management, LLC, Caxton Capital Group, LLC, and Casa Nostra Enterprise, Inc., in an amount to be determined at trial, that Plaintiff be awarded punitive damages in an amount to be determined at trial, that Plaintiff be awarded its reasonable costs and attorneys' fees, and that the Court order whatever further relief it should deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

                                                        Respectfully submitted,
                                                        MWF Foundation, Inc.

                                                        By: /s/ Samuel Neschis
                                                              one of its attorneys.

Samuel Neschis (ARDC No. 6274113)
Horowitz & Weinstein
311 W. Superior Street, #525
Chicago, Illinois 60654
(312) 787-5533